UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMIE STEPHEN, | No. 2:20-cv-1841 KJN P |
| Plaintiff, | |
| v. | ORDER |
| C. TILESTONE, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

Multiple courts have found plaintiff has sustained three strikes under 28 U.S.C. 1915(g),[1] and in light of the instant order, the undersigned defers consideration of plaintiff's request for leave to proceed in forma pauperis. Plaintiff's complaint is dismissed with leave to amend.

---

[1] For example, in Stephen v. Lozano, 2:19-cv-1407 KJM EFB (E.D. Cal. March 20, 2020), the court noted a three-strikes order first issued against plaintiff in March of 2007. (Id., ECF No. 10 at 1-2.) In April of 2012, Magistrate Judge Hollows found plaintiff had sustained at least six strikes, which Magistrate Judge Brennan had reviewed and confirmed were valid strikes. (Id. at 2, & n.2.) The judge further found that plaintiff failed to demonstrate he was in peril of imminent harm, and recommended that plaintiff's motion to proceed in forma pauperis be denied, and plaintiff be required to pay the filing fee. (Id. at 3.) The district court adopted the findings and recommendations in toto, and on June 11, 2020, dismissed the case based on plaintiff's failure to pay the filing fee. (Id., ECF Nos. 13, 15.)

Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the

pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

The Civil Rights Act

To state a claim under § 1983, a plaintiff must allege:  (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation.  See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).  That is, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  In sum, plaintiff must identify the particular person or persons who violated his rights, and set forth specific factual allegations as to how such person violated plaintiff's rights.

Plaintiff's Complaint

Plaintiff names twelve individuals as defendants, ranging from a counselor, correctional officers, associate wardens, and a doctor, working at two different prisons, and concerning multiple unrelated allegations.

Plaintiff's first claim involves medical care, but includes a false imprisonment claim, alleging he was wrongfully housed in administrative segregation, wrongfully transferred away from his ongoing cancer treatment, presently housed in an overcrowded dorm without adequate cooling system where it reaches 100 degrees.  In the injury section, plaintiff adds that the "alleged treatment by Montejo of 1-10-20 to 3-28-20 was a crime."   (ECF No. 1 at 5.)

In his second claim, plaintiff alleges violations of his First, Fifth, Eighth Amendment rights, the intentional infliction of emotional distress, and his rights under the Domestic Partnership Act, marking the issue as "retaliation." (ECF No. 1 at 6.)  While not entirely clear, it appears plaintiff has (or had) a relationship with Correctional Officer Nunez, and as a result, Nunez was transferred to a different prison, and plaintiff was allegedly falsely written up for

3

stalking. Plaintiff disputes that the charges were brought by Nunez, whose name is typewritten on the reports, and argues that without an actual signature, Nunez' name cannot be authenticated. Plaintiff adds that he was "forced to be treated by the same Doctor E. Montejo, as su[ed] in 2:18-cv-1296 KJM, who approved transfer of 3-28-2020." (ECF No. 1 at 6.) Plaintiff alleges defendant Pike wanted Nunez to persuade plaintiff to drop the suit against Montejo; Pike allegedly has a policy of forcing females to act romantically interested in inmates to persuade them to drop or not file lawsuits.

In his third claim, plaintiff alleges that after his transfer to CSP-Solano, under defendant Matteson, plaintiff was housed in an 11-person dorm built for four, willfully overcrowded, and subjecting plaintiff to imminent danger from COVID-19. Plaintiff claims his transfer from CMF was illegal, because his medical condition rendered him ineligible for involuntary transfer. On January 15, 2020, there was a conspiracy to transfer plaintiff to RJ Donovan by defendants Brown, Tileston, Davis, and Snelling, when safety and security was no longer at risk due to Nunez' transfer away from CMF. Plaintiff was housed in administrative segregation at CMF for 70 days, from January 10, 2020 to March 28, 2020, despite regulations stating such housing shall not exceed 30 days. He claims the false documents violated his right to due process, and he sustained damages while housed in segregation, and then put in 11-man dorm without a cooling system.

In his fourth claim, plaintiff marks "threat to safety" as the issue, and alleges violations of his Eighth Amendment right to a primary care doctor when conflicts exist. (ECF No. 1 at 8.) Plaintiff states that Dr. Montejo was reassigned to plaintiff's case, despite having been served as a defendant in Case No. 2:18-cv-1796 KJM, resulting in delays in his prostate cancer and kidney disease treatment. He alleges Dr. Montejo "illegally approved" plaintiff's transfer on March 28, 2020.

In claim five, plaintiff alleges violation of his right to equal protection based on the actions of defendants Tileston, Snelling, Ormand, David, and Brown, intentionally discriminating against plaintiff, an African American member of a suspect class, and a prisoner, with ties to a female correctional officer, now relocated to a different prison, by violating plaintiff's right to

4

marry, visit, correspond with the officer, with whom plaintiff had "relations for 2 years."  (ECF No. 1 at 9.)  Plaintiff alleges that "Goon Squad Brown" stated that the "write-up by alleged Nunez seems to be someone else's forgery, fraud. . . ."  (ECF No. 1 at 9.)

Plaintiff seeks, *inter alia*, money damages and immediate release from prison due to COVID-19.

Discussion

> Misjoinder

Plaintiff's disparate allegations comprise a "shotgun" or "kitchensink" complaint, "complaints in which a plaintiff brings every conceivable claim against every conceivable defendant."  Gurman v. Metro Hous. & Redevelopment Auth., 842 F.Supp.2d 1151, 1153 (D. Minn. 2011) (fn. omitted).  Therefore, the complaint does not comply with Federal Rule of Civil Procedure 20(a)(2), which provides that the right to relief against multiple defendants must arise out of common events and reflect common questions of law or fact.  See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("[u]nrelated claims against different defendants belong in different suits.").  In any amended complaint, plaintiff must limit his claims to those that arise from common questions of law or fact; alternatively, plaintiff may name a single defendant and bring as many claims as he has against that party, see Fed. R. Civ. P. 18(a).[2]

If unrelated claims are improperly joined, the court may dismiss them without prejudice. Fed. R. Civ. P. 21; 7 Alan Wright, Arthur Miller & Mary Kay Kane, Richard Marcus, Federal Practice and Procedure § 1684 (3d ed. 2012); Michaels Building Co. v. Ameritrust Co., 848 F.2d 674, 682 (6th Cir. 1988) (affirming dismissing under Rule 21 of certain defendants where claims against those defendants did not arise out of the same transaction or occurrences, as required by Rule 20(a)).  Here, plaintiff has alleged numerous unrelated claims.  Plaintiff's complaint is dismissed with leave to file an amended complaint that complies with the rules of joinder.

---

[2]  Moreover, plaintiff should take care not to include claims he is litigating in other pending actions.  For example, plaintiff admits he is litigating a case against Dr. Montejo, Case No. 18-cv-1796 KJM, which challenges treatment for plaintiff's CKD and prostate cancer.  In addition, court records demonstrate plaintiff is challenging his placement in the dorm at CSP-Solano due to the excessive heat, in Stephen v. Lozano, No. 2-20-cv-1286 TLN DMC (E.D. Cal.).  Both cases were pending at the time this order was drafted.

Where parties have been misjoined, the court may drop a party or sever the claims against that party. Fed. R. Civ. P. 21. "[D]istrict courts who dismiss rather than sever must conduct a prejudice analysis, including 'loss of otherwise timely claims if new suits are blocked by statutes of limitations.'" Rush v. Sport Chalet, Inc., 779 F.3d 973, 975 (9th Cir. 2015) (quoting DirecTV, Inc. v. Leto, 467 F.3d 842, 846-47 (3d Cir. 2006)). Here, because such unrelated claims are based on incidents in 2020, plaintiff will not be prejudiced by their dismissal, without prejudice, from this action. Plaintiff may attempt to pursue such claims in separate, timely actions. See also George, 507 F.3d at 607 ("Unrelated claims against unrelated defendants belong in different suits").

Alleged Wrongful Transfer

A prisoner does not have a constitutional right to a particular classification status. Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir.1987) (quoting Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976), in which the Supreme Court, in a footnote, explicitly rejected a claim that "prisoner classification and eligibility for rehabilitative programs in the federal system" invoked due process protections). Thus, in general, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments. See Board of Regents v. Roth, 408 U.S. 564, 569 (1972); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007) (classification at a Level IV prison rather than at a Level III prison did not subject Myron to an atypical and significant hardship).

Challenge to Rules Violation Report

It is unclear whether plaintiff is attempting to challenge a rules violation report for stalking, or if he was ultimately found guilty of such offense. However, if he intends to raise such a claim in his amended complaint, he is advised of the following standards.

Under Heck, if a judgment in favor of a plaintiff on a civil rights action necessarily will imply the invalidity of his or her conviction or sentence, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence already has been invalidated.

////

Heck v. Humphrey, 512 U.S. 477 (1994); Edwards v. Balisok, 520 U.S. 641, 648 (1997) (Heck applies to prison disciplinary proceedings).

> [A] state prisoner's § 1983 action is barred (absent prior invalidation) -- no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) -- *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

### Conspiracy

Plaintiff alleges that on January 15, 2020, there was a conspiracy to transfer plaintiff to RJ Donovan by defendants Brown, Tileston, Davis, and Snelling, when safety and security was no longer at risk due to Nunez' transfer away from CMF. A conspiracy claim brought under § 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541). However, it does not appear that plaintiff was transferred to RJD Donovan; thus, plaintiff did not sustain an injury from such alleged conspiracy, and therefore did not sustain a constitutional violation therefrom.

### Alleged Conflict With Primary Care Doctor

The fact that prison officials required plaintiff to continue being seen by a doctor whom plaintiff had sued fails to state a cognizable Eighth Amendment claim. An inmate does not have a constitutional right to receive medical treatment from the physician or other medical provider of his or her choice. See Rojo v. Paramo, 2014 WL 2586904, at *4 (S.D. Cal. June 10, 2014) ("The Eighth Amendment does not require that [a prisoner] receive 'unqualified access to health care,' nor does it entitle to him to the treatment he wants.") (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992) and citing Tolbert v. Eyman, 434 F.2d 625, 626 (9th Cir. 1970)), appeal dismissed (Apr.

22, 2015); Martel v. California Dep't of Corr., 2007 WL 2288316, at *5 (E.D. Cal. Aug. 8, 2007) (holding that while the prisoner-plaintiff "may not be have been granted permission to be treated by the doctor of his choice or at the institution of his choice, such denials do not violate the Eighth Amendment.") (citing Jackson v. Fair, 846 F.2d 811, 817-818 (1st Cir. 1988) (holding that transferring a prisoner from one facility to another does not violate the Eighth Amendment because "the Constitution . . . does not guarantee to a prisoner the treatment of his choice"); Brownlow v. Chavez, 871 F. Supp. 1061, 1064 (S.D. Ind. 1994) ("The Eighth Amendment does not guarantee a prisoner's choice of a physician, a mode of treatment or a place of treatment, nor does or could it guarantee a particular outcome or level of comfort in the face of physical maladies.") (internal citations omitted); Calloway v. Contra Costa Cty. Jail Corr. Officers, 2007 WL 134581, at *31 (N.D. Cal. Jan. 16, 2007) (rejecting "the proposition that a prisoner has an Eighth Amendment right to receive treatment in the location or with the provider of his choice"), aff'd, 321 F. App'x 605 (9th Cir. 2009).  Accordingly, the requirement that plaintiff continue being treated by Dr. Montejo fails to state a claim.

### Three Strikes Bar Under 28 U.S.C. § 1915(g)

Because plaintiff has sustained three strikes, he is precluded from proceeding in forma pauperis in this action unless he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).  The availability of the imminent danger exception turns on the conditions a prisoner faced at the time the complaint was filed, not at some earlier or later time.  See Andrews v. Cervantes, 493 F.3d 1047, 1053 (9th Cir. 2007).  "[A]ssertions of imminent danger of less obviously injurious practices may be rejected as overly speculative or fanciful." Id. at 1057 n.11. Imminent danger of serious physical injury must be a real, present threat, not merely speculative or hypothetical.  To meet this exception, the complaint of a "three-strikes" prisoner must plausibly allege that the prisoner was faced with imminent danger of serious physical injury at the time his complaint was filed.  See Williams v. Paramo, 775 F.3d 1182, 1189 (9th Cir. 2015); Andrews, 493 F.3d at 1055.

Courts have stressed that allegations of imminent danger must be supported by specific, credible allegations of harm, McNeil v. United States, 2006 WL 581081 (W.D. Wash. Mar. 8,

8

1  2006), by allegations showing that the danger faced is "real, proximate, and/or ongoing,"
2  Andrews, 493 F.3d at 1056, and by allegations that are not speculative, Brown v. Newsom, 2019
3  WL 2387762, at *1 (E.D. Cal. June 6, 2019).  Plaintiff must have shown that he faced a "genuine
4  emergency" and "time [was] pressing."  Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002).

Here, plaintiff fails to allege facts indicating that a specific defendant knew of imminent harm to plaintiff, and disregarded it, causing some injury to plaintiff.  Although plaintiff alleges Dr. Montejo approved plaintiff's transfer, there are no facts demonstrating that the doctor knew where plaintiff would be transferred, or in what part of the new prison plaintiff would be housed.  None of the other named defendants appear connected to housing plaintiff in a dorm at CSP-Solano.  Plaintiff alleges no facts indicating that any of the twelve defendants are subjecting him to imminent injury.  Rather, many of plaintiff's allegations pertain to incidents that took place at CMF, long before plaintiff was transferred to CSP-Solano, where he has been housed since March of 2020.

While the COVID-19 pandemic poses risks to everyone, including prisoners, the CDCR website reflects that staff at many state prisons have confirmed cases, with San Quentin State Prison having the highest (289), and High Desert State Prison having the lowest (21); but CSP-Solano is also near the low end at 39.  <https://www.cdcr.ca.gov/covid19/cdcr-cchcs-covid-19-status> (accessed September 15, 2020).  The level at CMF, where plaintiff was transferred from, was 47.  (Id.)  In addition, the CDCR reports that the population of inmates at CSP-Solano have one case of active COVID-19, and three resolved cases.
<https://www.cdcr.ca.gov/covid19/population-status-tracking> (accessed September 15, 2020).
CMF also had one active case, but seven resolved cases.  (Id.)

In his amended complaint, plaintiff must allege specific facts supporting his claim that he was in imminent danger of serious physical injury at the time he filed this action on September 12, 2020.

Improper Relief Sought

Finally, plaintiff is advised that he cannot seek release from prison through a civil rights action.  "This Court has held that a prisoner in state custody cannot use a § 1983 action to

challenge 'the fact or duration of his confinement.'" Wilkinson v. Dotson, 544 U.S. 74, 78 (2005), quoting Preiser v. Rodriguez, 411 U.S. 475, 489 (1973) (and collecting cases). Rather, plaintiff "must seek federal habeas corpus relief (or appropriate state relief) instead." Wilkinson v. Dotson, 544 U.S. at 78. Thus, plaintiff should not include release from prison in his requested relief in his amended complaint.

Standards Governing Potential Claims

The following legal standards may apply to some of plaintiff's intended claims for relief.

Eighth Amendment

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett, 439 F.3d at 1096. Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

It is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eighth Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06; see also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).

////

First Amendment:  Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation omitted).  To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  Conduct protected by the First Amendment includes communications that are "part of the grievance process."  Brodheim v. Cry, 584 F.3d 1262, 1271 n.4 (9th Cir. 2009).  If plaintiff intends to assert a retaliation claim, he must specifically identify the protected conduct at issue, name the defendant who took adverse action against him, and plead that the allegedly adverse action[3] was taken "because of" plaintiff's protected conduct.[4]

The Ninth Circuit has found that preserving institutional order, discipline and security are legitimate penological goals which, if they provide the motivation for an official act taken, will defeat a claim of retaliation.  Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners.").  The burden is thus on plaintiff to allege and demonstrate that legitimate correctional purposes did not motivate the actions by prison officials about which he complains.  See Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("[Plaintiff] must show that

---

[3] For purposes of evaluating a retaliation claim, an adverse action is action that "could chill a person of ordinary firmness from continuing to engage in the protected activity[ ]." Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006).  See also White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).

[4] Prisoners have a constitutional right to file prison grievances and pursue civil rights litigation in the courts.  See Rhodes, 408 F.3d at 567.  Prison officials may not retaliate against prisoners for exercising these rights.  Id. at 568; see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997); Bradley v. Hall, 64 F.2d 1276, 1279 (9th Cir. 1995).

there were no legitimate correctional purposes motivating the actions he complains of.").

Due Process Claims

Prisoners have liberty interests protected by the Due Process Clause only where the contemplated restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).  Thus, only some placements implicate due process and require notice and an opportunity to be heard and non-adversarial review of the evidence supporting the placement.  See e.g., Wilkinson v. Austin, 545 U.S. 209, 223-24 (2005) (recognizing that long-term placements in the state's supermax prison implicate liberty interests requiring due process protections.); May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (finding that administrative segregation fell within the terms of confinement ordinarily contemplated by a prison sentence); see also Bruce v. Ylst, 351 F.3d 1283 (9th Cir. 2003) (assignment of inmate suspected as gang affiliate to security housing was not a disciplinary measure but a matter of administrative discretion with minimal legal limitations).  As a general rule, a prisoner has no constitutional right to enjoy a particular security classification, Meachum v. Fano, 427 U.S. 215, 224-25 (1976) (no liberty interest protected by the due process is implicated in a prison's reclassification and transfer decisions), and no right to remain in the general population, Sandin, 515 U.S. at 484 (rejecting inmate's claim that any state action taken for punitive reasons implicates due process).

To determine the existence of atypical and significant hardships, the court considers "(1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence." Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting Sandin, 515 U.S. at 486-87.)

Leave to Amend

As discussed above, plaintiff's complaint must be dismissed.  The court, however, grants leave to file an amended complaint.

////

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions about which he complains resulted in a deprivation of plaintiff's constitutional rights. See, e.g., West, 487 U.S. at 48. Also, the complaint must allege in specific terms how each named defendant is involved. Rizzo v. Goode, 423 U.S. 362, 371 (1976). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. at 371; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff may not change the nature of this suit by alleging new, unrelated claims.[5] See Fed. R. Civ. P. 20(a)(2). Plaintiff is cautioned that his continued violation of court orders may result in the involuntary dismissal of this action. Fed. R. Civ. P. 41(b).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

---

[5] As discussed above, a plaintiff may properly assert multiple claims against a single defendant. Fed. Rule Civ. P. 18. Also, a plaintiff may join multiple defendants in one action where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Unrelated claims against different defendants must be pursued in separate lawsuits. See George, 507 F.3d at 607. This rule is intended "not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees -- for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George, 507 F.3d at 607.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed.

2. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

    a. The completed Notice of Amendment; and

    b. An original and one copy of the Amended Complaint.

Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must also bear the docket number assigned to this case and must be labeled "Amended Complaint."

Failure to file an amended complaint in accordance with this order may result in the dismissal of this action.

Dated: September 21, 2020

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/cw/step1841.14n

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMIE STEPHEN,<br><br>            Plaintiff,<br><br>     v.<br><br>C. TILESTON, et al.,<br><br>            Defendants. | No. 2:20-cv-1841 KJN P<br><br>NOTICE OF AMENDMENT |

Plaintiff hereby submits the following document in compliance with the court's order filed_____.

DATED:     _____       Amended Complaint

                               _____
                               Plaintiff