UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMIE STEPHEN, | No. 2:20-cv-1841 KJN P |
| Plaintiff, | |
| v. | ORDER |
| C. TILESTONE, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. As set forth below, the court dismisses plaintiff's amended complaint with leave to amend.

Background

Multiple courts have found plaintiff has sustained three strikes under 28 U.S.C. 1915(g).[1] However, if a plaintiff has three strikes under § 1915(g), he may still proceed in forma pauperis if

---

[1] For example, in Stephen v. Lozano, 2:19-cv-1407 KJM EFB (E.D. Cal. March 20, 2020), the court noted a three-strikes order first issued against plaintiff in March of 2007. (Id., ECF No. 10 at 1-2.) In April of 2012, Magistrate Judge Hollows found plaintiff had sustained at least six strikes, which Magistrate Judge Brennan had reviewed and confirmed were valid strikes. (Id. at 2, & n.2.) The judge further found that plaintiff failed to demonstrate he was in peril of imminent harm, and recommended that plaintiff's motion to proceed in forma pauperis be denied, and plaintiff be required to pay the filing fee. (Id. at 3.) The district court adopted the findings and recommendations in full, and on June 11, 2020, dismissed the case based on plaintiff's failure to pay the filing fee. (Id., ECF Nos. 13, 15.)

he can show that he was in imminent danger at the time of filing his complaint. Andrews v. Cervantes, 493 F.3d 1047, 1053 (9th Cir. 2007). Because plaintiff is being granted an additional opportunity to amend his complaint, the undersigned again defers consideration of plaintiff's request for leave to proceed in forma pauperis.

Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

The Civil Rights Act

To state a claim under § 1983, a plaintiff must allege: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978). That is, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). In sum, plaintiff must identify the particular person or persons who violated his rights, and set forth specific factual allegations as to how such person violated plaintiff's rights.

Plaintiff's Amended Complaint

Plaintiff names six individuals as defendants, ranging from acting or associate wardens and wardens at California Medical Facility ("CMF") and California State Prison, Solano ("CSP-Solano"), a doctor, a Deputy Attorney General, and a correctional officer at CMF, again concerning unrelated allegations.

Plaintiff's first claim alleges First and Eighth Amendment violations, based on defendant Tileston's alleged retaliation at CMF, resulting in plaintiff being segregated for 70 days. Plaintiff alleges defendant Tileston heard plaintiff's grievance concerning the ventilation at CMF, and then sets forth information concerning his prior lawsuit against defendant Dr. Montejo. Plaintiff claims that Dr. Montejo took a diagnosis from a computer on advice from his attorney, Deputy

Attorney Gansom (named as defendant "J.M. Gascom"). As injury, plaintiff claims that one of the confidential documents used at plaintiff's January 15, 2020 ICC hearing was from a settlement hearing in the Montejo lawsuit. (ECF No. 15 at 4.)

In his second claim, plaintiff again marks the box "retaliation," and alleges violations of his First, Fifth, and Fourteenth Amendment rights, equal protection, contracts, and "public policy contrary to [California] Penal Code Section 2600." (ECF No. 15 at 5.) Plaintiff claims he is a "suspect class prisoner," and appears to allege that the January 10, 2020 segregation of plaintiff was in retaliation for plaintiff's relationship with Correctional Officer Nunez. Plaintiff further alleges that since 2018, Correctional Officer Pike retaliated against plaintiff by ordering and manipulating Rios and Dumas to try and convince plaintiff to drop lawsuits, and used threats of job loss as to Nunez. As injury, plaintiff claims his rights to marry, visit and correspond, and right to own property were violated, he was punished by segregation for seventy days, and his mail is still being delayed and censored. (ECF No. 15 at 5.)

In his third claim, plaintiff states that after his transfer to CSP-Solano, under defendant Matteson, plaintiff was initially housed in a 180 man open dorm, and is now housed in a 12-person pod built for four, with no doors, and overcrowded in the midst of COVID-19 pandemic. Such housing subjects plaintiff, who is at high risk due to his prostate cancer, asthma, prior punctured lung, and CKD kidney disease, to imminent danger from COVID-19. On March 1, 2020, defendant Montejo gave consent to transfer plaintiff to Stockton or Solano, and removed plaintiff's diagnosis of CKD kidney disease by Dr. Teng in 2017. Plaintiff claims that defendant Matteson's lack of adequate medical screening on March 28, 2020, led to the 39 or more COVID-19 cases at CSP-Solano since plaintiff's arrival on March 28, 2020. As injury, plaintiff claims he has had three COVID-19 tests since arriving at CSP-Solano, which he claims is inadequate, and he is at extreme risk of harm, injury or death from COVID-19.

Plaintiff seeks, *inter alia*, money damages, appointment of counsel, and costs of suit. (ECF No. 6 at 8.)

////

////

Discussion

    Defendants

    Plaintiff failed to include sufficient charging allegations as to defendant Lozano. Plaintiff's sole allegation as to Lozano is set forth in Claim Two, in the context of his retaliation claim against Tileston. Plaintiff states only "as knowledge by Warden Lozano." (ECF No. 6 at 5.) Plaintiff's allegation as to Lozano is vague and unclear, and the appeal signed by Lozano sheds no light on Lozano's involvement in any violation of plaintiff's constitutional rights. (ECF No. 6 at 14.)

    As to defendant Montejo, although plaintiff recounts his prior lawsuit against defendant Montejo concerning medical care, plaintiff articulates no charging allegations as to Montejo violating plaintiff's constitutional rights either on his own, or relevant to, or related to, plaintiff's retaliation claim against defendant Tileston in plaintiff's first claim.

    Plaintiff names "J.M. Gascon," Attorney General, as a defendant. But the sole allegation as to such defendant, referenced as "Attorney Gansom" in the pleading,[2] was that Gansom gave legal advice to Dr. Montejo. (ECF No. 15 at 4.) Plaintiff fails to demonstrate how such attorney defendant violated plaintiff's constitutional rights. Moreover, it is unclear whether such attorney is a proper defendant. Plaintiff alleges no facts demonstrating that such defendant acted under color of state law, but even if the attorney did so, plaintiff failed to articulate the causal connection between Gansom's actions and any alleged violation of plaintiff's constitutional rights.

    Equal Protection

    The Fourteenth Amendment's Equal Protection Clause provides that no state shall deny to any person "the equal protection of the laws." U.S. Const. amend. XIV. The Equal Protection Clause ensures that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To establish a violation, plaintiff must demonstrate that he was similarly situated to others who received preferential treatment, City of

---

[2] In addition, a search of the California State Bar website reflects no "J. Gascon" or "Gansom" as a licensed attorney in California. <http://members.calbar.ca.gov>, accessed January 25, 2021.

1  Cleburne, Tx. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985), and that there existed a
2  discriminatory motive or intent for that different treatment. McLean v. Crabtree, 173 F.3d 1176,
3  1185 (9th Cir. 1999). Plaintiff fails to identify any other similarly-situated prisoners, and includes
4  no allegations demonstrating that he was similarly situated to other prisoners who received
5  preferential treatment.
6      In addition, to state an Equal Protection claim, plaintiff must allege that the defendant
7  intentionally discriminated against him based on his membership in a protected class. Hartmann
8  v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705
9  F.3d 1021, 1030 (9th Cir. 2013). Plaintiff claims that as a prisoner he is the member of a suspect
10 class. But plaintiff is mistaken because "neither prisoners nor 'persons convicted of crimes'
11 constitute a suspect class for equal protection purposes." United States v. Whitlock, 639 F.3d
12 935, 941 (9th Cir. 2011); Glauner v. Miller, 184 F.3d 1053, 1054 (9th Cir. 1999) ("[P]risoners are
13 not a suspect class . . . ."); McQueary v. Blodgett, 924 F.2d 829, 834-35 (9th Cir. 1991) ("Inmates
14 are not entitled to identical treatment as other inmates merely because they are all inmates.").
15 Thus, plaintiff cannot state a cognizable equal protection claim based on his status as a prisoner.
16 If plaintiff includes such claim in his second amended complaint, the undersigned will
17 recommend the claim be dismissed.
18      Alleged Wrongful Transfer
19      Plaintiff renews his claim that Dr. Montejo consented to plaintiff's transfer from CMF.
20 However, as plaintiff was previously informed, a prisoner does not have a constitutional right to a
21 particular classification status. Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987)
22 (quoting Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976), in which the Supreme Court, in a
23 footnote, explicitly rejected a claim that "prisoner classification and eligibility for rehabilitative
24 programs in the federal system" invoked due process protections). Thus, in general, prison
25 officials' housing and classification decisions do not give rise to federal constitutional claims
26 encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth
27 Amendments. See Board of Regents v. Roth, 408 U.S. 564, 569 (1972); see also Myron v.
28 Terhune, 476 F.3d 716, 718 (9th Cir. 2007) (classification at a Level IV prison rather than at a

1  Level III prison did not subject Myron to an atypical and significant hardship).

California Penal Code Section 2600

In connection with this second claim, plaintiff cites a violation of "'Contracts' Public Policy Contrary p.c. 2600." (ECF No. 6 at 5.) Such citation is unclear. But plaintiff has not established that California Penal Code Section 2600[3] permits a private right of action. "A private right of action under a criminal statute has rarely been implied." Harvey v. City of South Lake Tahoe, 2011 WL 3501687, at *7 (E.D. Cal. Aug. 9, 2011); Bailey v. Leonhardt, 481 F. App'x 381, 382 (9th Cir. 2012) ("The district court properly dismissed several of [plaintiff's] claims before trial because they relied on criminal statutes that provided no private right of action.").

Retaliation

It is unclear whether plaintiff can state a cognizable retaliation claim.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation omitted). To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Conduct protected by the First Amendment includes communications that are "part of the grievance process." Brodheim v. Cry, 584 F.3d 1262, 1271 n.4 (9th Cir. 2009). If plaintiff intends to assert a retaliation claim, he must specifically identify the protected conduct at issue, name the defendant who took adverse action against him, and plead that the allegedly adverse action[4] was

---

[3] Section 2600 provides, in pertinent part: "A person sentenced to imprisonment in a state prison or to imprisonment pursuant to subdivision (h) of Section 1170 may during that period of confinement be deprived of such rights, and only such rights, as is reasonably related to legitimate penological interests." Cal. Penal Code § 2600(a).

[4] For purposes of evaluating a retaliation claim, an adverse action is action that "could chill a person of ordinary firmness from continuing to engage in the protected activity[ ]." Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006). See also White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).

7

1  taken "because of" plaintiff's protected conduct.[5]

2  The Ninth Circuit has found that preserving institutional order, discipline and security are legitimate penological goals which, if they provide the motivation for an official act taken, will defeat a claim of retaliation. Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners."). The burden is thus on plaintiff to allege and demonstrate that legitimate correctional purposes did not motivate the actions by prison officials about which he complains. See Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("[Plaintiff] must show that there were no legitimate correctional purposes motivating the actions he complains of.").

In Claim One, plaintiff appears to contend that defendant Tileston retaliated against plaintiff because Tileston heard plaintiff's grievance concerning ventilation issues, and the next day plaintiff was segregated. However, the January 17, 2020 classification committee chrono states that plaintiff "was initially placed in ASU on 1/10/20 . . . due to a staff separation alert. Information was received that [plaintiff] is an acquaintance and has personal knowledge of a CMF staff member." (ECF No. 6 at 11.) Plaintiff fails to address how Tileston's action in segregating plaintiff did not reasonably advance a legitimate correctional goal. Indeed, it is likely that actions taken due to a finding that plaintiff was being overfamiliar with staff would advance a legitimate correctional goal. See Anderson v. Debritz, 2010 WL 2674439, at *5 (C.D. Cal. July 2, 2010) ("[Anderson] not only fails to show the absence of a legitimate correctional goal, but affirmatively provides one on behalf of Defendants, namely, the investigation of "overfamiliarity with staff."), citing Mauro v. Arpaio, 188 F.3d 1054, 1059 (9th Cir. 1999) (*en banc*), cert. denied, 529 U.S. 1018 (2000).

Also, plaintiff generally alleges "retaliation for 1st Amendment Access to Court." (ECF

---

[5] Prisoners have a constitutional right to file prison grievances and pursue civil rights litigation in the courts. See Rhodes, 408 F.3d at 567. Prison officials may not retaliate against prisoners for exercising these rights. Id. at 568; see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997); Bradley v. Hall, 64 F.2d 1276, 1279 (9th Cir. 1995).

No. 6 at 4.) But such conclusory statement is insufficient. Plaintiff must specifically identify his protected conduct.

In Claim Two, plaintiff alleges that defendant Pike retaliated against plaintiff by ordering others to try and convince plaintiff to drop lawsuits, but plaintiff fails to identify any adverse action he suffered as a result. In Claim Two, plaintiff also includes his retaliation claim against Tileston, now explaining that the January 10, 2020 segregation of plaintiff was a "guise" because the knowledge of overfamiliarity with staff existed since 2018, and plaintiff has the right to correspond, marry, and visit, and the security threat ceased when staff member Nunez left the premises on January 10, 2020. However, prison regulations may infringe on a prisoner's rights as long as the regulations are rationally related to a legitimate penological concern. See Turner v. Safley, 482 U.S. 78 (1987). Thus, if plaintiff violated a legitimate prison regulation governing overfamiliarity with staff, he was not engaged in protected conduct. Indeed, the January 17, 2020 classification committee chrono which states that plaintiff was retained in the ASU "due to staff safety concerns." (ECF No. 6 at 11.)

While it is unclear whether plaintiff can amend his pleading to state a cognizable retaliation claim, plaintiff is granted leave to do so. However, in any second amended complaint, plaintiff must address all five elements of Rhodes as to each defendant named in a retaliation claim.

Third Claim

Plaintiff's third claim is unclear. Plaintiff appears to claim that his transfer from CMF to CSP-Solano put him at extreme risk of contracting COVID-19 in violation of the Eighth Amendment. But he also claims imminent danger and cites Andrews, 493 F.3d at 1047, which governs the exception to the three strikes bar under § 1915(g).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy

and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

In addition, prison officials have a duty to ensure prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citation omitted). To plead an Eighth Amendment claim, prisoners must allege facts sufficient to plausibly show that officials acted with deliberate indifference to a substantial risk of harm to their health or safety. Farmer v. Brennan, 511 U.S. 825, 847 (1994).

To prevail on a claim of cruel and unusual punishment a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). The deliberate indifference standard involves an objective and subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious. . . ." Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. at 298). Second, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety. . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.

Moreover, where, as here, plaintiff names wardens as defendants, plaintiff must specifically allege the warden's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. See Hansen, 885 F.2d at 646; Johnson v. Duffy, 588 F.2d at 743-44. That is, plaintiff may not sue an official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. Iqbal, 556 U.S. at 679. In other words, wardens are not liable based solely on their role in supervising prisons.

Here, although plaintiff claims a violation of the Eighth Amendment, he does not allege facts showing how a particular defendant violated such rights. Plaintiff's vague and conclusory

allegations are insufficient to demonstrate deliberate indifference on the part of any named defendant. Moreover, even assuming plaintiff is at high risk of contracting COVID-19, plaintiff's health status was the same at CMF as it is at CSP-Solano. COVID-19 is infecting all state prisons, including CMF. Indeed, the CDCR website now reports that CMF has had 7 COVID-19 related deaths, whereas CSP-Solano has had 2.[6] Plaintiff fails to demonstrate how his transfer to CSP-Solano puts him at higher risk. Finally, plaintiff's allegations suggest otherwise. Although plaintiff was initially housed in a 180-man open dorm, he was moved to a 12-man pod. Despite plaintiff's claim that this pod was built for four inmates, thus remaining overcrowded, plaintiff's move to a smaller pod suggests prison staff took steps to limit plaintiff's exposure to COVID-19, and he concedes he has been tested for COVID-19 on three occasions.

To the extent that plaintiff's third claim is his attempt to meet the exception to the three strikes bar under § 1915(g), the undersigned suggests that in his second amended complaint, plaintiff include such arguments on a separate page, not as one of his claims or causes of action to avoid confusion.

Misjoinder

Plaintiff's amended complaint continues to press unrelated allegations. Plaintiff's retaliation claims against defendants Tileston and Pike are not related, and those retaliation claims are not related to plaintiff's third claim concerning his housing at CSP-Solano. Therefore, the complaint does not comply with Federal Rule of Civil Procedure 20(a)(2), which provides that the right to relief against multiple defendants must arise out of common events and reflect common questions of law or fact. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("[u]nrelated claims against different defendants belong in different suits."). In any second amended

---

[6] Population COVID-19 Tracking, <https://www.cdcr.ca.gov/COVID19/population-status-tracking/>, accessed January 25, 2021. The court may take judicial notice of facts that are not subject to reasonable dispute because they are generally known or are capable of accurate and ready determination, including "public records and government documents available from reliable sources on the Internet, such as websites run by government agencies." Gerritsen v. Warner Bros. Entm't Inc., 112 F.Supp.3d 1011, 1033 (C.D. Cal. 2015) (internal quotations omitted); Fed. R. Evid. 201(b).

11

complaint, plaintiff must limit his claims to those that arise from common questions of law or fact; alternatively, plaintiff may name a single defendant and bring as many claims as he has against that party, see Fed. R. Civ. P. 18(a).[7]

If unrelated claims are improperly joined, the court may dismiss them without prejudice. Fed. R. Civ. P. 21; 7 Alan Wright, Arthur Miller & Mary Kay Kane, Richard Marcus, Federal Practice and Procedure § 1684 (3d ed. 2012); Michaels Building Co. v. Ameritrust Co., 848 F.2d 674, 682 (6th Cir. 1988) (affirming dismissing under Rule 21 of certain defendants where claims against those defendants did not arise out of the same transaction or occurrences, as required by Rule 20(a)).  Here, plaintiff has alleged numerous unrelated claims.  Plaintiff's amended complaint is dismissed with leave to file an amended complaint that complies with the rules of joinder.

Where parties have been misjoined, the court may drop a party or sever the claims against that party.  Fed. R. Civ. P. 21.  "[D]istrict courts who dismiss rather than sever must conduct a prejudice analysis, including 'loss of otherwise timely claims if new suits are blocked by statutes of limitations.'"  Rush v. Sport Chalet, Inc., 779 F.3d 973, 975 (9th Cir. 2015) (quoting DirecTV, Inc. v. Leto, 467 F.3d 842, 846-47 (3d Cir. 2006)).  Here, because it appears that most of plaintiff's claims are based on incidents in 2020, with the exception of plaintiff's claim against defendant Pike based on incidents in late 2018 (ECF No. 6 at 14), plaintiff will not be prejudiced by their dismissal, without prejudice, from this action.  Plaintiff may attempt to pursue such claims in separate, timely actions.  See also George, 507 F.3d at 607 ("Unrelated claims against unrelated defendants belong in different suits").

Finally, plaintiff is cautioned that because he has suffered three strikes under § 1915(g), his amended complaint "must reveal a nexus between the imminent danger it alleges and the claims it asserts, in order for the litigant to qualify for the 'imminent danger' exception of

---

[7] Moreover, plaintiff should take care not to include claims he is litigating in other pending actions. For example, plaintiff is litigating a case against Dr. Montejo, Case No. 18-cv-1796 KJM, which challenges treatment for plaintiff's CKD and prostate cancer.  In addition, plaintiff is challenging his placement in the dorm at CSP-Solano due to the excessive heat in Stephen v. Lozano, No. 2-20-cv-1286 TLN DMC (E.D. Cal.).  Both cases were pending at the time this order was drafted.

12

§ 1915(g)." Stine v. Fed. Bureau of Prisons, 2015 WL 5255377, at *3 (E.D. Cal. Sept. 9, 2015) (quoting Pettus v. Morgenthau, 554 F.3d 293, 298-99 (2d Cir. 2009)).

Leave to Amend

As discussed above, plaintiff's amended complaint must be dismissed. The court, however, grants leave to file a second amended complaint.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions about which he complains resulted in a deprivation of plaintiff's constitutional rights. See, e.g., West, 487 U.S. at 48. Also, the second amended complaint must allege in specific terms how each named defendant is involved. Rizzo v. Goode, 423 U.S. 362, 371 (1976). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. at 371; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff may not change the nature of this suit by alleging new, unrelated claims.[8] See Fed. R. Civ. P. 20(a)(2). Plaintiff is cautioned that his continued violation of court orders, such as including unrelated claims, may result in the involuntary dismissal of this action. Fed. R. Civ. P. 41(b).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's second amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists

---

[8] As discussed above, a plaintiff may properly assert multiple claims against a single defendant. Fed. Rule Civ. P. 18. Also, a plaintiff may join multiple defendants in one action where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Unrelated claims against different defendants must be pursued in separate lawsuits. See George, 507 F.3d at 607. This rule is intended "not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees -- for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George, 507 F.3d at 607.

because, as a general rule, an amended complaint supersedes the original complaint.  See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)).  Once plaintiff files a second amended complaint, the original pleading no longer serves any function in the case.  Therefore, in the second amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

As explained in the first screening order, plaintiff must also allege specific facts supporting his claim that he was in imminent danger of serious physical injury at the time he filed this action on September 12, 2020.  (ECF No. 4 at 8-9.)

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's amended complaint is dismissed.

2. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

    a. The completed Notice of Amendment; and

    b. An original Second Amended Complaint.

Plaintiff's second amended complaint shall be filed on the court's civil rights complaint form, and must comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The second amended complaint must also bear the docket number assigned to this case and must be labeled "Second Amended Complaint."

Failure to file a second amended complaint in accordance with this order may result in the dismissal of this action.

3. The Clerk of the Court is directed to send plaintiff the form for filing a civil rights complaint by a prisoner.

Dated:  January 27, 2021

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/step1841.14b

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMIE STEPHEN,<br><br>          Plaintiff,<br><br>  v.<br><br>C. TILESTON, et al.,<br><br>          Defendants. | No.  2:20-cv-1841 KJN P<br><br><br>NOTICE OF AMENDMENT |

     Plaintiff hereby submits the following document in compliance with the court's order filed_____.

     _____     Second Amended Complaint
DATED:

                                                    _____
                                                    Plaintiff